UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VICTOR KRAVCHENKO,

                Petitioner,

    v.

TODD BLANCHE, *et al.*,

                Respondents.

Case No. C26-1507-MLP

ORDER

Petitioner Victor Kravchenko filed, through counsel, a petition for writ of habeas corpus under 28 U.S.C. § 2241, arguing that his current detention by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, has become indefinite. (Dkt. # 8 at 7-9, 22.) He separately argues that his redetention without first receiving notice and an opportunity to respond violates his due process rights under the Fifth Amendment. (*Id.* at 23-24.) He seeks release from immigration custody and injunctive relief related to future redetention and third-country removal. (*Id.* at 28-29.) Respondents filed a timely return (dkt. # 11), along with sworn declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Sooseon Jeon (dkt. # 12) ("Jeon

ORDER - 1

Decl.") and their counsel Alixandria Morris (dkt. # 13) ("Morris Decl."). Petitioner filed a timely traverse in reply. (Dkt. # 14.)

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 8) and ORDERS that Petitioner be released from detention within twenty-four hours. Remaining claims and requested relief are addressed below.[1]

## I.    BACKGROUND

Petitioner first entered the United States as a child in 1990 after he and his family left the U.S.S.R. (Dkt. # 8 at 6; Jeon Decl., ¶ 3.) He was granted Lawful Permanent Resident ("LPR") status in 1992. (Jeon Decl., ¶ 4.)

On November 28, 2011, Petitioner was convicted of Possession with Intent to Distribute Oxycontin. (Jeon Decl., ¶ 5.) On December 9, 2011, ICE served Petitioner with a Notice to Appear ("NTA"), charging him with removability under the Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii) based on his controlled substances conviction. (*Id.* ¶ 6; *see* Morris Decl., ¶ 2, Ex. 1.)

On March 14, 2012, Petitioner was ordered removed to Russia. (Jeon Decl., ¶ 7; *see* Morris Decl., ¶ 2, Ex. 3.) On July 23, 2012, Petitioner was taken into custody by ICE, "pursuant to the administratively final order of removal," and later released on November 5, 2012, on an Order of Supervision ("OSUP") because the Government was unable to effectuate his removal. (Jeon Decl., ¶¶ 8-9; *see* Morris Decl., ¶ 2, Ex. 4.)

On September 11, 2025, DHS Enforcement and Removal Operations ("ERO") requested travel documents for Petitioner from the Russian Embassy in Washington, D.C. (Jeon Decl., ¶ 12; *see* Morris Decl., ¶ 2, Ex. 5.) Officer Jeon states that "ERO routinely removes [noncitizens]

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

to Russia and anticipates being able to remove Petitioner in the normal course once a travel document is obtained," but does not otherwise explain why ICE renewed its efforts to obtain travel documents for Petitioner's removal at this point. (Jeon Decl., ¶ 12.) Officer Jeon asserts that ERO plans to release Petitioner by August 3, 2026, if travel documents are denied or otherwise not received. (*Id.*)

On January 13, 2026, Petitioner was arrested for "Physical Control of a Vehicle Under the Influence," which, according to Officer Jeon, remains pending. (Jeon Decl., ¶ 10.)

On February 3, 2026, ICE arrested Petitioner after he reported to the ICE field office in Spokane, Washington. (Jeon Decl., ¶ 11.) ICE thereafter revoked his OSUP on the basis of his January 13, 2026 arrest. (*Id.*) He was subsequently transferred to the NWIPC, where he remains detained. (*Id*. ¶¶ 11, 13.)

## II.     LEGAL STANDARDS

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

In *Zadvydas v. Davis*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens who are subject to final orders of removal. 533 U.S. 678, 699 (2001). The Court recognized that "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment." *Id.* at 690. The Court concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

ORDER - 3

### III.    DISCUSSION

**A.    Petitioner's Detention Has Become Indefinite Under *Zadvydas***

The parties agree that Petitioner's order of removal is final and that his detention is therefore governed under 8 U.S.C. § 1231(a). (Dkt. ## 8 at 7, 22; 11 at 2-3.) The parties also agree that *Zadvydas* provides the appropriate framework to guide the Court in deciding whether Petitioner's post-final-order detention has become indefinite, but disagree on whether it affords Petitioner relief. (Dkt. ## 8 at 7-9, 22; 11 at 6-9.)

The record reflects that Petitioner spent over three months in detention between July 2012 and November 2012, and his current redetention is approaching four months. (*See* Jeon Decl., ¶¶ 7-8, 11, 13.) Respondents disagree with, but nevertheless acknowledge, that courts in this District have found that the six-month presumption need not be consecutive. (Dkt. # 11 at 7 n.2 (citing *Jaranow v. Bondi*, 819 F. Supp. 3d 1229 (W.D. Wash. 2026)).) The Court agrees with others in this District that the presumptively reasonable period of detention does not reset each time a noncitizen is detained. *See Yuksek v. Bondi*, 2026 WL 60364, at *2 (W.D. Wash. Jan. 8, 2026) (collecting cases). The Court finds that Petitioner's detention has exceeded the presumptively reasonable period articulated in *Zadvydas*.

Petitioner has also shown good reason to believe it is not significantly likely that he will be removed to Russia in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. First, Petitioner does not identify as a Russian citizen. (Dkt. # 8 at 6, 22.) Further, Petitioner points out that ICE has been unable to secure a travel document since 2011 and that the Government considers Russia to be an "uncooperative country" that does not timely produce travel documents even for its own nationals. (*Id.* at 22.) Respondents argue this is insufficient for Petitioner to meet his burden, asserting that Petitioner has not presented evidence that Russia has declined to

ORDER - 4

accept him or that his removal is otherwise barred. (Dkt. # 11 at 8.) Respondents also cite *Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008), to support their argument that an uncertain travel date "does not support the conclusion that [a noncitizen's] detention has become indefinite" under *Zadvydas*. (*Id.*)

The facts of *Prieto-Romero* are distinguishable from Petitioner's here. In that case, Prieto-Romero was found removable by an immigration judge and the Board of Immigration Appeals, but his removal order was stayed while he sought judicial review in the Ninth Circuit. 534 F.3d 1053, 1056 (2008). One of the reasons the court found Prieto-Romero's detention definite and certain was because his appeal was subject to the "strict procedural rules" of judicial review (as opposed to governmental administrative processes) which the court found provided "satisfactory assurance" that his petition would be resolved within reasonable time. *Id.* at 1064-65. In addition, Prieto-Romero received a bond hearing while in custody, which the court found afforded him an individualized determination of the government's interest in his continued detention. *Id.* at 1068. Finally, the Government had "introduced evidence showing that repatriations to Prieto-Romero's country of origin, Mexico, are routine and that the government stands ready to remove Prieto-Romero as soon as judicial review is complete." *Id.* at 1063. Petitioner here has not received a bond hearing and is subject to the Government's undefined removal timeline, without any evidence that Russia considers him to be Russian or has accepted the Government's travel document request.

In any event, Petitioner has offered more than an uncertain travel date to satisfy his burden. First, his final order of removal is now over fourteen years old. (*See* Morris Decl., ¶ 2, Ex. 3.) Further, Petitioner has already been detained and released once while ICE sought to complete his removal in 2012. (Jeon Decl., ¶¶ 8-9.) He is now approaching four months on his

ORDER - 5

second detention, awaiting travel documents that were requested in September 2025 from a country that Respondents have recently characterized as "uncooperative." (*Id.* ¶ 12; *see* dkt. # 8 at 6, Ex. 1.) The Court therefore finds Petitioner has "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

The burden therefore shifts to the Government to rebut Petitioner's showing. *Zadvydas*, 533 U.S. at 701. Respondents assert they have done so by pointing to ICE's 2025 travel document request combined with their "anticipat[ion] one will issue." (Dkt. # 11 at 8.) The Court does not find this sufficient to rebut Petitioner's showing.

First, the Court observes that Respondents' letter to the Russian Embassy expressly requested that travel documents issue within seven days. (*See* Morris Decl., ¶ 2, Ex. 5.) It has now been over seven *months*, with no evidence the request was received, accepted, or processed by the Russian Embassy. Nor do Respondents provide a date they anticipate receiving travel documents, or an estimated timeline to complete Petitioner's removal when they are ultimately received.

Further, Officer's Jeon's conclusory statement that "ERO routinely removes [noncitizens] to Russia" does not shed light on Petitioner's individual circumstances. Despite Respondents' characterization, Petitioner has presented a reasonable challenge to his purported Russian citizenship, considering he was born in the then-U.S.S.R. Neither Officer Jeon nor Respondents address whether Russia considers noncitizens in Petitioner's position to be Russian citizens, or whether the Government has otherwise had success removing noncitizens who are similarly situated. Finally, the fact that ICE has agreed to release Petitioner by August 3, 2026, if he has

ORDER - 6

not been removed only serves to cast doubt on whether the Government genuinely anticipates imminent receipt of documents and, subsequently, Petitioner's removal.

At most, the record reflects that Respondents have requested travel documents and that there is a possibility that Russia will accept Petitioner at some point in the future. That is not the same as a significant likelihood that Petitioner will be accepted in the reasonably foreseeable future. *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) ("Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur."). The Court therefore finds that Respondents have failed to meet their burden to rebut Petitioner's showing.

Because there is not a likelihood that Russia will accept Petitioner in the reasonably foreseeable future, his detention is no longer permitted under 8 U.S.C. § 1231(a) as construed in *Zadvydas*. 533 U.S. at 699-700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Accordingly, the Court orders Petitioner's release from immigration detention.

### B.     Remaining Claims and Requested Relief

Petitioner's release from detention under *Zadvydas* moots his procedural due process claims based on the Government's alleged noncompliance with federal regulations. (*See* dkt. # 8 at 9-14, 23-24.) The Court therefore does not reach those issues.

Petitioner also seeks prospective relief related to any future redetention. (Dkt. # 8 at 23.) Petitioner asks the Court to prohibit the Government from redetaining him without first holding a hearing before a neutral decisionmaker at which the Government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence. (*Id.* at 28.) In addition, Petitioner seeks a related order prohibiting the Government from redetaining him unless the

ORDER - 7

Government first obtains a Russian travel document, provides that travel document to his lawyer, provides Petitioner an opportunity to leave on his own, and he does not leave. (*Id.*)

Finally, Petitioner seeks permanent injunctive relief related to his possible removal to a third country. (Dkt. # 8 at 29.) Specifically, Petitioner requests an order prohibiting the Government from removing, or seeking to remove, him to a third country without first providing notice and a meaningful opportunity to respond in reopened removal proceedings. (*Id.*) He also seeks an order prohibiting his removal to any third country where he is likely to face imprisonment or punishment upon arrival. (*Id.*)

A party "seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2008). A permanent injunction requires a "cognizable danger of recurrent violation," not just a past violation. *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003).

While Petitioner alleges (and Respondents largely overlook) that his redetention occurred without notice or an opportunity to respond, the limited factual record does not establish a specific, real, and immediate threat that he will again be redetained without process after his release here. Further, Petitioner does not meaningfully engage with the *eBay* factors beyond a general recitation of the elements followed by a conclusion that they are satisfied here. (*See* dkt. # 8 at 23.) Accordingly, his request for a permanent injunction related to future redetention is denied without prejudice.

ORDER - 8

As for Petitioner's concern about third-country removal, the record does not reflect that Petitioner is currently facing third-country removal. Respondents are awaiting travel documents from Russia and there is no evidence the Government has abandoned its efforts to obtain those documents or is now contemplating a different country for Petitioner's removal. (Dkt. # 11 at 16.) While Petitioner challenges DHS's third-country removal practices generally, he does not explain how he faces an imminent risk of third-country removal, why that would constitute an irreparable injury, or why current federal regulations would be so inadequate as applied to him that a court order is necessary. On this record, the Court cannot conclude that, absent an injunction, Petitioner "faces a likelihood of removal to a third country with no meaningful opportunity to challenge that decision." *Nguyen*, 796 F. Supp. 3dat 737. Accordingly, the Court denies Petitioner's request for an injunction limiting third-country removal. Nothing in this Order prevents Petitioner from seeking such relief in the future if necessary.

### IV.   CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1)   Petitioner's petition for writ of habeas corpus (dkt. # 8) is GRANTED in part.

    (a)   Within **twenty-four (24) hours**, Respondents shall release Petitioner from immigration detention under conditions consistent with applicable statutory and regulatory authority; and

    (b)   Within **two (2) business days**, Respondents shall file a status report with the Court confirming Petitioner's release.

(2)   Petitioner's request for permanent injunctive relief is DENIED without prejudice.

//

//

ORDER - 9

Dated this 2nd day of June, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 10